UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, et al.,

    Plaintiffs,

v.                                                                                                  Hon. Jane M. Beckering

MONTCALM COUNTY SHERIFF'S                                      Case No. 1:25-cv-418
DEPARTMENT, et al.,

    Defendants.
_____/

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Pursuant to the Court's May 19, 2025 Order (ECF No. 23), Plaintiffs have filed an amended complaint (ECF No. 26) that omits all of the original Defendants, adds new Defendants, adds additional factual allegations, and asserts two claims designated as violations of substantive due process and procedural due process. Plaintiffs now sue Montcalm County, Kent County, the City of Greenville, Lieutenant Tom George of the Montcalm County Sheriff's Department, Montcalm County Sheriff Mike Williams, Sgt. Steven DeWitt of the Greenville Police Department, and Greenville Public Safety Director Brian Blomstrom. Plaintiffs sue all individual Defendants in their individual and official capacities. Although Plaintiff Jane Doe #2 continues to be listed as a party to the amended complaint, I discern no claim that she has asserted for herself.

Having reviewed the amended complaint, for the reasons set forth in my April 28, 2025 Report and Recommendation (ECF No. 17) and the additional reasons set forth below, I recommend that the Court dismiss the amended complaint for failure to state a claim. While Plaintiffs' allegations set out a disturbing account of events, the amended complaint has not stated a claim under federal law.

### I.     Background

Plaintiff Jane Doe #1 married Offender Doe sometime prior to 2017. Prior to their marriage, Offender Doe had been convicted of a sex offense and was required to register as a sex offender pursuant to the Michigan Sex Offender Registration Act (SORA). (ECF No. 26 at PageID.92.) Jane Doe #1 has five children, three with Offender Doe and two (including Jane Doe #2) from another relationship. (*Id.* at PageID.94.)

Jane Doe #1 and Offender Doe moved to Gowen, Michigan, Montcalm County, in 2017. Soon thereafter, Offender Doe began abusing drugs and alcohol and became physically and mentally abusive to Jane Doe #1 and her children. On May 18, 2020, Offender Doe knocked Jane Doe #1 unconscious in their home in front of her children. When Jane Doe #1 woke up, she placed her children in the car, but Offender Doe had taken the keys. She called 911while Offender Doe circled the car, let the air out of the tires, tried to unlock the car door, and eventually placed a riding lawnmower in front of the car to prevent Jane Doe #1 from leaving. When the police arrived, Offender Doe locked himself in the house, and Jane Doe #1 and her children left with Offender Doe's parents. The police left without contacting Offender Doe and did not file charges against him. Following this incident, Offender Doe's parents convinced him to stay with them. While Offender Doe was gone from their residence, Jane Doe #1 built a wall in the middle of the house to divide it into two legal residences with separate addresses and separate entrances, each facing different streets. Offender Doe returned from his parents' home once Jane Doe #1 had divided the marital home and updated his SORA registry with his newly-created address. At that point, Jane Doe #1 told Offender Doe that she intended to file for divorce. She did so in October 2020. (*Id.* at PageID.99.)

Jane Doe #1 alleges that between 2020 and 2023, she made multiple attempts to notify Montcalm County law enforcement and other agencies of Offender Doe's abusive and threatening

conduct, but they failed to charge him or take action to keep him away from Jane Doe #1 and her children. For example, she notes that Offender Doe would regularly break into her half of the duplex and send her photos of him inside while she was gone. During the same time, however, Montcalm County charged Offender Doe with multiple offenses—including OWI, fleeing the scene of an accident, reckless and careless driving, assault and battery of an unrelated woman at a bar, breaking and entry into an unrelated party's vehicle, and multiple probation violations. (*Id.* at PageID.100.) Jane Doe #1 alleges that "[d]espite every encounter between police and Offender Doe resulting in criminal charges, not one violation of law as it relates to Jane Doe #1 resulted in a charge or probation violation despite being clearly warranted." She alleges in the very next paragraph, however, that Montcalm County officers twice charged Offender Doe "with a crime pertaining to Jane Doe #1's complaints," one of which resulted in an arrest. However, the prosecutor's office later dismissed both charges. (*Id.*)

On September 3, 2021, Offender Doe broke into Jane Doe #1's half of the residence, where a friend was helping her with her children. Offender Doe assaulted both Jane Doe #1 and her friend. A Michigan State Police (MSP) Troper arrived, and Offender Doe fled the scene. The Trooper charged Offender Doe with assault of Jane Doe #1's friend but not with trespassing, breaking and entering, or anything related to Jane Doe #1. Later that evening, Greenville police officers arrested Offender Doe for breaking into a car, after an unrelated woman reported that he had punched her in the face outside of a Greenville bar. The Greenville police charged Offender Doe with the assault of the woman and break-in of the vehicle and turned him over to the MSP for the assault of Jane Doe #1's friend, who booked him into the Montcalm County Jail. While Offender Doe was in jail, Jane Doe #1's friend requested a bond review to list Jane Doe #1 as the

victim of the assault since it occurred at her house, but her request was ignored in violation of the Michigan Crime Victims' Rights Act (MCVRA). (*Id.* at PageID.101–02.)

On September 12, 2021, after having posted bond, Offender Doe showed up at Jane Doe's residence when he noticed that her friend's car was not there. Offender Doe told Jane Doe #1 that he had to stay away from the friend, but not Jane Doe #1, apparently referring to his bond condition. Fed up with the lack of charges against Offender Doe for repeatedly breaking into her home, Jane Doe filed an emergency petition for an ex parte Personal Protection Order (PPO) with the Montcalm County Circuit Court. Montcalm County Circuit Court Judge Schaffer, who was handling Jane Doe #1's divorce case, denied the ex parte request and told her to schedule a hearing. On September 16, 2021, Judge Schaffer held a hearing on the PPO petition without Offender Doe present. During the hearing Judge Schaffer refused to allow Jane Doe #1's friend to enter the courtroom and denied her the opportunity to testify about the abuse she had witnessed. He also refused to consider any of the documents Jane Doe #1 had submitted showing a clear and extensive history of abuse and threats. Jane Doe #1 alleges that Judge Schafer made remarks indicative of discrimination against Jane Doe #1, stating that Jane Doe #1 knew Offender Doe had a record when she married him and questioning "how a man can break into his own home." (*Id.* at PageID.102–03.) Although Judge Schaffer was initially reluctant to grant a PPO, Jane Doe #1's lawyer eventually persuaded him to issue the order. However, Judge Schaffer indicated that he would vacate the PPO if Offender Doe later challenged it. (*Id.* at PageID.103.) Jane Doe #1 alleges that Judge Schaffer appeared more concerned about Offender Doe's rights than with her and her children's safety. (*Id.*)

On September 28, 2021, the MSP Trooper informed Jane Doe #1's friend that the Montcalm County prosecutor had decided to drop the assault charge against Offender Doe

4

involving her but would retain the assault charge involving the other woman in Greenville. At the next scheduled hearing on October 20, 2021, Jane Doe #1's friend tried to contest the dismissal of the charge involving her, but she was denied entry into the courtroom. She never learned why the charge was dropped, which Jane Doe #1 claims violated the MCVRA. In December 2021, Judge Schaffer finalized the divorce and dissolved the PPO. (*Id.*)

In the spring of 2023, Jane Doe #1 and her children moved to Greenville. On May 8, 2023, Jane Doe #1 went to the Greenville Public Safety Department to report Offender Doe's ongoing harassment, threats, stalking, and hacking of her phone. She showed Defendant Blomstrom texts and photos from Offender Doe to support her allegations, including evidence of a threat Offender Doe had made to photoshop images of Jane Doe #1 in a sexual way and email them to her friends, family, and coworkers. Jane Doe #1 showed Defendant Blomstrom a photo Offender Doe had of her in her underwear, and Defendant Blomstrom responded, "well that's not really a crime," and failed to file charges. (*Id.* at PageID.104.) Jane Doe #1 alleges that Defendant Blomstrom was incorrect because Offender Doe specifically violated Greenville Ordinance 26-28.

The following day, Offender Doe went to Jane Doe #1's new residence in Greenville after sending her threatening texts. Around midnight, she heard a noise outside, opened the door, and saw Offender Doe slashing her car tires. She locked herself inside and called the police. A short time later, Sgt. DeWitt arrived and took her statement.[1] Jane Doe #1 told him about the years of death threats and the previous PPO and said that she was concerned for her and her children's safety knowing that he was outside with a knife. About a half hour later, Sgt. DeWitt called Jane Doe #1 and informed her that he had found Offender Doe and charged him with Malicious

---

[1] Jane Doe #1 alleges that "Officer Degroot" arrived at her residence, but it appears that she intended to refer to Sgt. DeWitt, as he is a named Defendant and is not mentioned elsewhere in the amended complaint.

5

Destruction of Property but had allowed him to leave on foot. (*Id.* at PageID.104–05.) The following morning, an official from the school across the street from Jane Doe #1 reported a suspicious person in a vehicle outside the school to the police. Greenville police officer Jeff Haynes arrived at the scene and found Offender Doe. Officer Haynes asked him to leave without making an arrest, even though Offender Doe was a sex offender with a knife, on probation, parked next to a school, and stalking his ex-wife. Jane Doe #1 asserts that Offender Doe was essentially allowed to sleep right next to her house. (*Id.* at PageID.104.) Jane Doe #1 later learned that the prosecutor had dropped the Malicious Destruction of Property charge against Offender Doe. Jane Doe #1 alleges that she was never consulted before the charges were dropped but that records indicate that it was "dismissed by party," even though she never agreed to the dismissal. She alleges that the dismissal without her input constituted another violation of the MCVRA. (*Id.* at PageID.105–06.)

In May or June 2023, Offender Doe's father's girlfriend sent Jane Doe #1 a text stating that she, Offender Doe, and Offender Doe's father had sexually abused at least two of Jane Doe #1's children. The girlfriend committed suicide shortly thereafter. Jane Doe #1 notified Child Protective Services, which in turn notified law enforcement. The investigation uncovered one assault by Offender Doe in Kent County and years of abuse that reportedly occurred in the marital home in Montcalm County. Kent County eventually charged Offender Doe for sexually assaulting Jane Doe #2, but Montcalm County would not press charges. Offender Doe absconded in June of 2023. (*Id.* at PageID.106.)

Jane Doe #1 informed authorities that Offender Doe was no longer living at the marital home and was on the run. She notified Kent County that he was required to register as a sex offender in Montcalm Conty every three months, and his next required reporting date was in early October 2023. Hoping that Montcalm County might arrest Offender Doe, she advised it of the

6

warrant and that their house was empty, and she was trying to sell it. Despite her numerous efforts to get Montcalm County to update the SORA website and charge Offender Doe for failing to comply with his registration obligations, Montcalm County failed or refused to update the registry.

Offender Doe missed his October registry appointment, at which point Jane Doe #1 contacted the MSP, who advised her that Montcalm County had jurisdiction over Offender Doe, and it was their responsibility to update his absconder status on the sex offender registry. Jane Doe #1 pled with Montcalm County on numerous occasions to update its registry and inform it that the information regarding Offender Doe's past abuse, property damage, and stalking could affect Offender Doe's bond conditions and the outcome of the pending Kent County trial and sentencing. At some point, Jane Doe #1 went into the Sheriff's Office and spoke with an officer she believed to be Sheriff Williams. Sheriff Williams told her, while she was recording him on video, that the County did perform SORA registrations but would not change Offender Doe's status. Subsequently, Lieutenant George refused to identify the officer on the video for Jane Doe #1. (*Id.* at PageID.107–08.)

Offender Doe finally surrendered to Kent County in February of 2024 and was able to bond out the same day. Jane Doe #1 alleges that Kent County violated the MCVRA by allowing Offender Doe to bond out without first consulting Jane Doe #1 and Jane Doe #2. Montcalm County apparently has yet to update Offender Doe's status or to charge him for absconding. Jane Doe #1 alleges that Montcalm County's inaction has influenced Offender Doe's bond and has caused Plaintiffs to live in fear of Offender Doe. Kent County agents have refused to consider Montcalm County's inaction by failing to include a non-contact condition in Offender Doe's bond and have refused Jane Doe #1's request for bond review and revocation. (*Id.* at PageID.109–10.)

7

At some point recently, Jane Doe #1 received a notice that Judge Schaffer terminated Offender Doe's child support obligations. Offender Doe had been facing an abuse and neglect case as a result of the sexual assault allegations, but he voluntarily agreed to give up his parental rights to his three children from his marriage to Jane Doe #1. When Jane Doe #1 inquired with Montcalm County and the Friend of the Court about the reason for the termination of child support, they informed her that it was normal when parental rights are terminated. Jane Doe #1 contends that this outcome is contrary to the law established in *Evink v. Evink*, 214 Mich. App. 172 (1995), and *In re Beck*, 488 Mich. 6 (2010).

## II.  Discussion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a

8

>  notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Because Plaintiffs are proceeding pro se, the Court is bound to construe their complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### A.    Substantive Due Process

Plaintiffs summarize their substantive due process claim as follows: "Joint and several liability for combined failures, emotional distress and financial harm, violations of Plaintiffs' crime victims rights, refusal to perform official duties and arbitrary exercise of government power." (*Id.* at PageID.112.) Plaintiffs characterize the claim as one for violation of their right to substantive due process, citing 42 U.S.C. §§ 1983, 1985, 1986, and 1988. (*Id.*)

First, Plaintiffs fail to allege a claim under Section 1985 sufficiently. Plaintiffs do not indicate which subsection of the statute they invoke, but under the facts alleged, a claim could arise, if at all, only under Section 1985(3) which prohibits conspiracies to deprive a person or class of person of equal protection of the laws. This claim fails because Plaintiffs allege no fact indicating that any Defendant was motivated by class-based animus. *See Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it."). More importantly, the claim is based solely on conclusions. That is, there is no factual support that Defendants made an agreement or a plan to engage in illegal, discriminatory conduct. *See Saunders v. Ghee*, No. 94-4073, 1995 WL 101289, at *1 (6th Cir. Mar. 9, 1995) ("Even under the most liberal construction, Saunders's complaint under § 1985(3) merely alleges broad, conclusory language without the factual allegations necessary to support a conspiracy theory."); *O'Hara v. Mattix*, 255 F. Supp. 540, 542 (W.D. Mich. 1966) ("The courts will not accept mere allegations of conspiracy; there must be some showing of facts to support the conspiracy."). In short, Plaintiffs merely allege a series of independent acts by different individuals without any sort of agreement. This does not suffice to allege a conspiracy.

Because Plaintiffs fail to state a plausible claim under Section 1985(3), they fail to state a plausible Section 1986 claim as well. Section 1986 creates a cause of action for a defendant's knowing failure to prevent a Section 1985 conspiracy. Where a plaintiff has stated no cause of action under Section 1985, no cause of action exists under Section 1986. *See Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

Finally, Section 1988 does not create an independent cause of action for a civil rights violation. *See Moor v. Alameda Cnty.*, 411 U.S. 693, 704 n. 17 (1973) (noting that "the lower

10

federal courts have repeatedly rejected the argument § 1988 independently creates a federal cause of action for the violation of federal civil rights") (collecting cases); *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974) ("We have held that section 1988 does not create federal causes of action for violation of civil rights.").

Second, as set forth in the prior Report and Recommendation, which I incorporate by reference, Plaintiffs may not maintain a due process claim under Section 1983 based on a governmental entity's failure to comply with SORA or the MCVRA because those statutes do not create enforceable rights in favor of Plaintiffs that could support a due process claim. (ECF No. 17 at PageID.65–66.) Consequently, Kent and Montcalm Counties' alleged failures to comply with the MCVRA and/or Montcalm County's failure to properly enforce SORA will not support a substantive due process claim.

Third, like the original complaint, the central focus of the amended complaint is the failure of Montcalm County and/or Greenville police officers to arrest and/or prosecute Offender Doe. As explained in the prior Report and Recommendation, Plaintiffs lack any due process interest in having Offender Doe arrested or prosecuted, and under *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), government officials are not obligated to protect citizens from each other.

Plaintiffs mention the state-created danger doctrine in their amended complaint (ECF No. 26 at PageID.114), but they fail to allege any fact that would support liability under that doctrine against any Defendant. As noted in the prior Report and Recommendation, the state-created danger doctrine requires affirmative state action to apply; inaction is insufficient. (ECF No. 17 at PageID.65.) Moreover, the affirmative act must have *increased* the danger to the plaintiff. *Estate of Smithers*, 602 F.3d at 763. For example, in *Estate of Smithers*, the plaintiffs alleged that the

11

defendant officers increased the danger to the decedent by taking his intoxicated girlfriend into custody on trespassing charges and then releasing her, allowing her to return to the decedent's home and shoot him. The plaintiffs argued that the officers should have arrested the girlfriend for domestic violence and held her for 20 hours. *Id.* at 759–60, 764. The Sixth Circuit rejected the contention, noting that the failure to hold the girlfriend was not an affirmative act, and as for releasing the girlfriend,

> releasing Washington from custody, did not "create" or "increase" the danger to plaintiffs. The officers did not require or encourage plaintiffs to remain in the unlocked house or suggest that Washington would be held for 20 hours so as to imply that plaintiffs would be safe. Their actions did not constitute an approval of Washington's threats any more than the return of the children in *DeShaney* or *Bukowski* encouraged that those children should be further harmed. As in those cases, these events were tragic; however, the officers' actions could not have been interpreted by a reasonable juror to have created or increased the danger to plaintiffs.

*Id. See also Estate of Olivarez v. City of Lansing*, No. 16-cv-10192, 2016 WL 4429618, at *3–4 (E.D. Mich. Aug. 22, 2016) (holding that the defendants' release of the perpetrator on bond following temporary detention was not an affirmative act that increased the danger to the decedent because the plaintiff failed to show that the decedent was safer before the perpetrator's encounter with the police than she was after his release from temporary custody). Here, Plaintiffs merely allege "[i]nactions, such as two Greenville Police officers allowing an armed suspect to be cited twice and never removed from Jane Doe #1's residence after threatening her life with that weapon[,]" "[t]he dropping [of] charges without the consent of the damaged parties by Montcalm's Prosecutor[,]" and "failing to take a single action against a person who was provably breaking into one's home, making death threats, sending photos of weapons to an abuse victim which is tantamount to intentional or gross negligence." (ECF No. 26 at PageID.113.) The state-created danger doctrine does not apply here.

B.  **Procedural Due Process**

Plaintiffs summarize this claim as follows: "Denying Plaintiffs['] right to submit evidence during PPO hearing, discriminatorily denying an ex-parte [PPO] despite CPS recommendation, lack of pre-deprivation notice and opportunity to be heard in revoking child support and bond hearings, failure to rectify Montcalm's refusal to correct and charge offender for SORA violations resulting in the omitting of evidence necessary to convict and keep offender away from victims pending trial." (*Id.* at PageID.115.) This conglomeration of claims fails for several reasons.

First, as already noted, neither SORA nor the MCVRA creates rights upon which Plaintiffs may bring a Fourteenth Amendment due process claim, and Plaintiffs have no constitutionally-protected interest in the arrest or prosecution of another.

Second, to the extent Jane Doe #1 asserts injury based on Judge Schaffer's rulings or comments during the 2021 PPO hearing or his order terminating Offender Doe's child support obligations, the *Rooker-Feldman* doctrine precludes this Court from reviewing those rulings or decisions.[2] Under the *Rooker–Feldman* doctrine, federal district courts lack subject matter jurisdiction "to engage in appellate review of state court proceedings or to adjudicate claims 'inextricably intertwined' with issues decided in state court proceedings." *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002). Only the United States Supreme Court may conduct federal review of state court proceedings. *See* 28 U.S.C. § 1257; *Patmon v. Michigan Supreme Ct.*, 224 F.3d 504, 506 (6th Cir. 2000).[3]

---

[2] As to the PPO hearing, it is difficult to imagine how Jane Doe #1 could have been prejudiced by any ruling or comment that Judge Shaffer made during the hearing. After all, Jane Doe #1 admits that Judge Shaffer ultimately issued the PPO she requested and did not terminate it until the divorce action was concluded.

[3] Plaintiffs have not sued Judge Shaffer, but any such claim brought in an individual capacity would be barred by the doctrine of absolute judicial immunity, as Judge Shaffer was clearly

Last, Plaintiffs allege that Defendant Blomstrom engaged in misconduct when asking to see private photos of Jane Doe #1. (*Id.* at PageID.116.) Such conduct does not give rise to a due process claim.

### C.   Equal Protection Claim

Although not expressly pled as a separate claim, the amended complaint suggests an intent to assert an equal protection claim by Jane Doe #1. "The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney*, 489 U.S. at 197 n.3 (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)). To state a claim under the equal protection clause, a plaintiff bears the burden of proving that "a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks omitted) (citation omitted); *see also Estate of Smithers*, 602 F.3d at 765. In *Knight v. Chattanooga Police Department*, No. 1:07-CV-101, 2008 WL 2704458 (E.D. Tenn. July 7, 2008), the court discussed two types of equal protection claims concerning domestic assaults. In the first type of claim, the plaintiff must establish that law enforcement handled domestic assaults differently from other forms of assault, resulting in less protection for a victim assaulted by a domestic perpetrator. Such claims are analyzed under a rational basis standard because the alleged policy, while discriminatory against victims of domestic violence, is gender-neutral on its face. *Id.* at *4. The second type of claim requires the plaintiff to show that the defendant's custom or policy is to

---

performing judicial functions in presiding over the PPO hearing and issuing the child support termination order. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). Moreover, even if the *Rooker-Feldman* doctrine did not deprive this Court of jurisdiction, and Judge Shaffer was not entitled to absolute immunity, any claim based on the PPO hearing would be barred by the three-year statute of limitations applicable to Section 1983 claims brought in Michigan. *See Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam).

provide less protection to victims of domestic violence than those of other crimes and that gender discrimination was the motivation for this disparate treatment. The plaintiff must also show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class. *Id.*

Although the basis of Jane Doe #1's claim is not entirely clear, she relies on her status as Offender Doe's domestic partner and asserts that while Montcalm County officials initiated criminal charges when Offender Doe's conduct involved others, it did not do so when his conduct involved Jane Doe #1. This claim fails for several reasons. First, Sheriff Williams and Lieutenant George are the only Montcalm County employees Jane Doe #1 has sued, but Jane Doe #1 fails to allege any facts indicating that they intentionally discriminated against her by denying her protection afforded to others. As to Sheriff Williams, Jane Doe #1 simply alleges that she believes he was the employee in the video who confirmed that Montcalm County handles SORA registrations but that they would not change Offender Doe's status. As for Lieutenant George, Jane Doe #1 simply alleges that he refused to identify the officer in the video. (ECF No. 26 at PageID.108.) These are not allegations supporting an equal protection claim.

Second, although Jane Doe #1 has sued Montcalm County, her allegations fail to support a claim against it under Section 1983. A municipality, such as the County, may be held liable under Section 1983 only when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the

15

governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-09. Jane Doe's claim fails at the first step because she has not alleged a factual basis for a policy or custom of the County that caused her alleged injury. Moreover, Jane Doe #1's own allegations undermine her claim, as she admits that Montcalm County officers twice charged Offender Doe with a crime pertaining to her complaints, one of which resulted in an arrest. Although she asserts that the Montcalm County prosecutor subsequently dismissed both charges, in doing so the prosecutor was not acting on behalf of the County. Rather, in Michigan, when enforcing the criminal laws, prosecutors act as agents of the State of Michigan. *See Pinkney v. Berrien Cnty.*, No. 1:21-CV-310, 2021 WL 9316105, at *3–4 (W.D. Mich. July 20, 2021) (citing *Cady v. Arenac Cnty.*, 574 F.3d 334 (6th Cir. 2009)). Thus, the prosecutor's decision to dismiss the charges cannot be attributed to Montcalm County.

Accordingly, Jane Doe #1 fails to sufficiently allege an equal protection claim.[4]

### III. Conclusion

For the foregoing reasons, I recommend that the Court dismiss Plaintiffs' amended complaint for failure to state a claim.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and

---

[4] I do not address whether Jane Doe #1 asserts a valid equal protection claim against the City of Greenville as any such claim appears limited to Montcalm County. However, if the Court should deem the equal protection claim also asserted against the City of Greenville, the same analysis would apply because the amended complaint alleges no conduct by Defendants Blomstrom or DeWitt that could arguably support an equal protection claim and the amended complaint lacks sufficient *Monell* allegations against the City. As for Kent County, no such claim could arguably be maintained because all of Offender Doe's conduct against Jane Doe #1 occurred in Montcalm County.

an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiffs appeal this decision, the Court assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date: July 7, 2025                                        /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).